**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| | * | |
| **v.** | * | **Crim. Case No.:  SAG-15-198** |
| | * | |
| **JONATHAN LEWIN,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## <u>MEMORANDUM OPINION AND ORDER</u>

On August 23, 2016, United States District Judge Marvin J. Garbis sentenced Jonathan Lewin to sixty (60) months of incarceration, to be followed by a period of twelve (12) years of supervised release.  ECF 79.  Lewin's expected release date is November 20, 2020, and the parties agree that he is scheduled for release to a halfway house less than one month from now, on July 16, 2020.  ECF 86 at 2; ECF 94 at 4-5.  Despite his fast-approaching release date, Lewin has filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), ECF 82, 86, in which he requests immediate release to electronic confinement in his parents' home.  The government opposes the motion, ECF 94, and Lewin replied, ECF 95.  This Court has also considered the supplemental information Lewin filed in support of his motion.  ECF 91.  In light of the extensive record in this case, no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons explained below, the motion will be denied.[1]

---

[1] This Memorandum and Order was originally filed under seal on June 22, 2020.  ECF 96.  Pursuant to the Court's Order, the parties have notified the Court that no redactions are necessary.  ECF 97, ¶ 2.

# I.      FACTUAL BACKGROUND

According to the stipulation of facts in Lewin's original plea agreement[2], a police detective conducting an online investigation discovered that someone at Lewin's residence had been making files depicting child pornography publicly available to other internet users.  ECF 33 at 9.  A search warrant was executed at Lewin's home, and forensic analysis of the electronic devices recovered revealed thousands of images of child pornography, including the images that law enforcement had believed him to have disseminated.  *Id.*  Moreover, the forensic analysis revealed evidence of voyeuristic behavior.  Lewin had taken hundreds of photographs of the buttocks of prepubescent and pubescent females, at public locations such as the zoo, the grocery store, or schools.  *Id.*  Lewin also added text banners to some of the images with phrases such as, "What an ass" or "Please fuck me." *Id.*

In particular, Lewin took multiple photographs of a single young girl, who was fourteen years of age at the time.  *Id.* at 10.  Lewin maintained photographs of the girl, an acquaintance of his, in a separate file in his computer under her name.  *Id.*  In that file, Lewin kept zoomed and cropped photographs pulled from her social media pages, and her mother's social media pages. *Id.*  He also took his own photographs of her, including images he took of her backside and buttocks as she was getting out of the front seat of his car.  *Id.*

Finally, the forensic examination revealed that Lewin had used various search terms to download and view child pornography from the internet, including but not limited to "child rape,"

---

[2] Lewin originally entered a plea pursuant to a written agreement under Rule 11(c)(1)(C). However, at the original sentencing, Judge Garbis rejected the parties' agreed sentence.  The Government subsequently charged Lewin with offenses carrying lesser penalties, and Lewin pled guilty to those charges without a new written agreement.

"child rape snuff," "preteen nudes," "preteen sex," "preteen daughter," "daddy daughter," "Lolita," "pedo," and "baby ass."  *Id.*

On August 10, 2016, Lewin pled guilty to seven counts of receipt and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  ECF 73.  At the lengthy sentencing hearing, Lewin presented a psychiatric expert, who testified that Lewin had been prescribed Adderall in the months prior to his arrest, and that hypersexuality is a possible side effect of Adderall.  *E.g.*, ECF 94-1 at 77:22-78:6.  The Government's expert testified that, despite his extensive experience treating individuals diagnosed with pedophilia, he had never seen pedophilia induced by Adderall or any other medication.  *Id.* at 15:17-17:4, 24:12-25:6.  The Court calculated Lewin's advisory guidelines range to be 97-121 months, but credited his argument about the Adderall-induced effects, and imposed a below-guidelines sentence at the statutory mandatory minimum term of imprisonment, sixty (60) months.  *Id.* at 6:10-13, 92:21-25.

On or about April 24, 2020,[3] Lewin submitted a written request for compassionate release to the warden of FCI Fort Dix, where he is detained, citing the COVID-19 pandemic and his chronic medical conditions:  asthma, history of pneumonia, food allergies, acid reflux, and seasonal allergies.  ECF 86-1 at 3.  Thirty days have now elapsed, without a response from the warden.  Lewin initially filed the motion *pro se* on May 4, 2020, ECF 82, but after this Court appointed him counsel, ECF 84, Lewin refiled the motion through counsel on May 26, 2020, ECF 86.

---

[3] Although there is some question as to the actual date of submission, the Government accepts April 24, 2020 as the appropriate date.  ECF 94 at 5 n.3.

## II.      LEGAL STANDARDS

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018).  Relevant to this motion, the First Step Act granted defendants, in addition to the Direct of the Bureau of Prisons ("BOP"), the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons."  § 603(b)(1).  Before a defendant's motion can be filed with the Court, one of two conditions must be satisfied:  (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.  *Id.*  Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

## III.     DISCUSSION

While Lewin's motion satisfies the procedural gatekeeping requirement of 18 U.S.C. § 3582(c)(1)(A), Lewin's motion fails to establish any "extraordinary and compelling reasons" for compassionate release.  Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018).  In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a

terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP.  *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."].

As several courts in this District have recognized, "[t]he First Step Act is in tension with the [Sentencing] Commission's Policy Statement," for the "catch-all" provision of § 1B1.13 cmt. n.1(D) only allows the BOP to determine what "other reasons" constitute "extraordinary and compelling" ones for release.  *United States v. Gutman*, Crim. No. RDB-19-0069, 2020 WL 2467435, at *2 (D. Md. May 13, 2020); *see also, e.g.*, *Wise v. United States*, Crim. No. ELH-18-72, 2020 WL 2614816, at *4-6 (D. Md. May 22, 2020) (describing how § 1B1.13 "is outdated in light of the [First Step Act]," and collecting cases holding similarly); *United States v. Decator*, __ F. Supp. 3d __, Crim No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020) ("The Policy Statement in § 1B1.13, however, is at least partially inconsistent with the First Step Act."). For the reasons elucidated by these courts, and others across the country, this Court concurs that it "may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)."  *United States v. Redd*, __ F. Supp. 3d __, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 & n.18 (E.D. Va. Mar. 16, 2020); *see also United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020); *United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases); *Decator*, 2020 WL 1676219, at *2; *United States v. Young*, No. 2:00-CR-00002-

1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[D]ependence on the BOP to determine the existence of an extraordinary and compelling reason . . . is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act.").

Relevant to this case, as the Government correctly concedes, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2; *see* ECF 94 at 14 (Government's concession). In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

To qualify for such consideration, though, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020); *United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and

6

asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates). The analysis under the first prong of this two-part inquiry is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19. As of the date of this Opinion, the CDC considers the following persons at a "higher risk for severe illness from COVID-19":

- Individuals aged 65 years and older;
- Individuals living in a nursing home or long-term care facility;
- Individuals with "chronic lung disease or moderate to severe asthma";
- Individuals with "serious heart conditions";
- "Immunocompromised" individuals, which "[m]any" conditions can cause, including "cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications";
- Severely obese individuals, i.e., those with a BMI of 40 or higher;
- Diabetic individuals;
- Those with chronic kidney disease undergoing dialysis treatments; and
- Those with liver disease.

*Coronavirus Disease 2019 (COVID-19): People Who Are at Higher Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 19, 2020) [hereinafter "CDC Risk Factors"].

Lewin meets neither prong. He is only 50 years old, not 65 or older, which is the enhanced risk range described by the CDC. *Id.* Most of the medical conditions Lewin cites, including food allergies, history of pneumonia, and acid reflux, *see* ECF 86 at 12, are not on the list of CDC risk factors relating to COVID-19, *see* CDC Risk Factors, *supra*. Although Lewin does cite asthma, the CDC risk factors only include "moderate to severe asthma." *Id.* Lewin's prison heath records

7

show no mention of asthma, until after his motion for compassionate release was filed.  *Compare* ECF 91-1 at 1-5 (noting a history of asthma in May, 2020 records), *with id.* at 6-12 (containing no such notation in 2018 records).  Even then, the asthma was only self-reported, and was not substantiated by physical examination, the chest X-ray taken of his lungs, or any other testing.  *See id.* at 1-5, 10-12.  The doctor prescribed no treatment for the reported asthma.  *Id.*  Thus, Lewin's asthma cannot plausibly be described as moderate or severe.  Finally, in his motion, Lewin cites his "history of smoking" as a basis for release.  ECF 86 at 12.  Although the CDC has recognized that smoking can lead to the development of immunocompromising illness, *see* CDC Risk Factors, *supra*, there is no evidence in Lewin's medical records to substantiate such a claim, ECF 91-1.

Not only is Lewin unable to establish an enhanced risk of severe symptoms from COVID-19, but he has not established a particularized risk present at Fort Dix.  General statistics that Lewin cites regarding the prevalence of the virus within the Bureau of Prisons facilities nationwide, ECF 86 at 13, are unpersuasive to this Court, as the experiences within different facilities vary greatly. Fort Dix, in particular, has not experienced a significant outbreak.  Currently, there are only fourteen confirmed active cases in the facility, out of 2,780 total inmates, and no staff member currently has the virus.  *See COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed June 19, 2020).  In fact, all twenty-eight of the other inmates who contracted the virus at Fort Dix at some point successfully recovered.  *Id.* Further, only five staff members have contracted the virus at Fort Dix, and they too recovered.  *Id.* No staff member or inmate at Fort Dix has died from COVID-19.  *Id.*  Thus, the risk that Lewin faces from continued detention at Fort Dix generally is similar to, if not lower than, that which he faces if this Court released him to the general population in Maryland.

Accordingly, Lewin has neither established a serious medical condition, under the circumstances of the current pandemic, a rampant COVID-19 outbreak at his place of incarceration, or any other extraordinary and compelling reason that might support his early release.  Essentially, he is in the same position as all other incarcerated individuals, because they unfortunately are less able to engage in social distancing practices as a result of their confinement. That fact alone, however, is insufficient to justify this Court's invocation of compassionate release. Because Lewin's medical conditions do not put him at any particular enhanced risk from a COVID-19 infection, and because the facility at which he will be incarcerated for the next few weeks has kept its viral transmission largely in check, there is no extraordinary and compelling reason to reduce his nearly-completed sentence.  The Bureau of Prisons will be in the best position to evaluate the appropriate placement for Lewin after his release from custody next month.

For these reasons, Lewin's Motion, ECF 82, 86, is DENIED.


**ORDER**

For the reasons stated in the Memorandum Opinion above, it is, this 19th day of June, 2020, hereby **ORDERED** that Lewin's Motion for Sentence Reduction, ECF 82, 86, is **DENIED**. Further, for good cause shown, the outstanding Motions to Seal, ECF 90 and 93, are **GRANTED**. The parties are **DIRECTED** to confer and, on or before **Monday, June 29, 2020**, submit to the Court proposed redactions to the Memorandum Opinion so that the Court may file a public, redacted version.

                                  /s/
                        _____
                        Stephanie A. Gallagher
                        United States District Judge